**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:  | Case No.: 22-18697-ABA |
| **Michelle Cecilia Fencl,** | Chapter: 13 |
| **Debtor.** | Judge Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is the Debtor, Michelle Cecilia Fencl's, Motion to Expunge Claims of Renny and Sheila Jones (the "Motion"). Doc. No. 57. After a one-day plenary hearing and considering the testimony and documentary evidence, along with pre-trial and post-trial memoranda, the court concludes that the Motion shall be denied in part and granted in part. Renny and Sheila Jones (the "Joneses") have established that they have an unsecured claim and are entitled to recover some of their investment under the theories of equitable lien and unjust enrichment. Their claim shall be reduced to eliminate costs relating to 633 Thomas Avenue and claimed attorneys' fees and costs.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O), and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The record is now closed and pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## PROCEDURAL HISTORY

Debtor filed for chapter 13 bankruptcy on November 1, 2022. On December 29, 2022, the Joneses filed Proof of Claim No. 9-1, in the amount of $1,422,608.98. The Joneses asserted a secured claim on the following five properties (the "Properties"):[1]

---

[1] No mortgages evidencing an actual secured claim were ever produced for any of the Properties.

1

1. 725 Morgan Avenue, Palmyra, NJ
2. 612 Lippincott Avenue, Riverton, NJ
3. 401 2nd Street, Riverton, NJ
4. 633 Thomas Avenue, Riverton, NJ
5. 602 Cinnaminson Street, Riverton, NJ.

The Debtor listed these properties, with the exception of 633 Thomas Avenue, on her schedules as the properties are deeded in her name. Doc. No. 1. On April 12, 2024, the Debtor filed the Motion. On May 15, 2024, the Joneses filed an Objection to the Motion. Doc. No. 72. The Debtor filed a Response to the Objection on May 28, 2024. Doc. No. 73. The Court held a hearing on June 6, 2024, at which it became clear that a plenary hearing was necessary to resolve the Motion. The Court directed the parties to submit a joint discovery and scheduling order (Doc. No. 82) and thereafter scheduled at plenary hearing. Debtor filed an additional brief on January 16, 2025. Each party filed proposed Findings of Fact and Conclusions of Law on February 13, 2025.

On February 5, 2025, the Joneses filed an amended proof of claim in the amount of $1,422,602.98. Claims Register, POC No. 9-2. On February 19, 2025, the court conducted settlement negotiations. The parties reached an agreement that the Joneses' proof of claim would be accepted and classified as unsecured. The court directed the parties to submit a motion to approve settlement and to continue negotiations over the amount of the proof of claim. On April 29, 2025, a status hearing was held at which the parties advised the court that they could not reach an agreement on the amount of the proof of claim. The Debtor filed a Supplemental Certification on May 14, 2025. Doc. No. 112. The Joneses filed additional certifications on May 14, 2025. Doc. No. 113.

On May 21, 2025, the court held a plenary hearing on the Motion at which the court heard the testimony of Mr. Renny Jones, Mr. Keith Fencl, the Debtor's estranged husband, and the Debtor. Following the close of testimony, the court took the matter under advisement, urged the parties to resume settlement negotiations, and directed that if settlement negotiations failed, the parties were to file the hearing transcript on the docket and file their post-trial brief three weeks thereafter. On August 5, 2025, the court sent email correspondence directing the parties to docket a written status report by Wednesday, August 20, 2025. Doc. No. 118. A transcript was docketed on August 12, 2025, and the Debtor filed a status report on August 20, 2025. The parties did not settle. The parties then filed their post-trial briefs on September 2, 2025. The Chapter 13 Trustee, Albert Russo, conducted additional settlement negotiations in the fall of 2025 and advised the court on December 12, 2025, that he had been unable to resolve the matter. The matter is now ripe for resolution.

2

## FINDINGS OF FACT

The Joneses and the Fencls were originally neighbors. Mr. Keith Fencl, who works in real estate, and Mr. Jones, who is retired but previously worked in project management, HVAC, and mechanical engineering, became friendly and in 2012 decided to start a business buying houses, renovating the houses, and eventually either selling or renting the houses. Mr. Jones funded the purchase of the houses and acted as general contractor, Mr. Fencl was the property manager, and the houses were deeded in the Debtor's name. The Debtor but did not take an active role in the business although she would occasionally visit the Properties during the renovation process. Doc. No. 119, Notes of Testimony (N.T.) at 47.

On September 24, 2012, Mr. Fencl created Fencl Enterprises, LLC to act as the property manager for the Properties. Ex. P-2. The Joneses and Mr. Fencl, on behalf of Fencl Enterprises, signed a Loan Agreement memorializing the parties' business relationship. The Debtor did not sign the Loan Agreement. Ex. P-1, PLT0001. The Loan Agreement provided that the net profits after costs which exceeded the amount of the interest rate annually would be divided between the parties with the Fencls receiving 50% and the Joneses receiving 50%. Regarding interest calculation and loan repayment the Loan Agreement provided as follows:

> Interest amount calculations
> The basis for the calculations is the average interest rate for each month multiplied by the daily loan balance. Further, the interest payments are not tax deductible.
>
> Monthly loan repayments
> The borrowers agree to pay the prior month's interest plus a minimum amount of the outstanding loan balance, which will be agreed later, every month. Given that circumstances can change on a month to month basis, the lenders will accept an average performance on this for any six month period starting with the period immediately following the initiation of the loan. More specifically, if all of the interest due and the agreed amount of ·the outstanding balance, is paid in every six month period, this will satisfy this requirement.

*See* Exhibit P-1, PLT0001. In total the following five properties were purchased:

| Address | Purchase Date | Price | Owner |
| --- | --- | --- | --- |
| 725 Morgan Avenue, Palmyra, NJ | 9/12/2012 | $140,000.00 | Michelle Fencl |
| 612 Lippincott Avenue Riverton, NJ | 11/2/2012 | $127,500.00 | Michelle Fencl |
| 401 Second Street, Riverton, NJ | 3/8/2013 | $110,000.00 | Michelle Fencl |
| 602 Cinnaminson Street, Riverton, NJ | 6/23/2015 | $175,000.00 | Michelle Fencl |

3

| 633 Thomas Avenue, Riverton, NJ | 4/2/2015 | $105,000.00 | Fencl Enterprises |

    Mr. Jones funded the purchase and renovation of the houses through a Merrill Lynch Loan Management Account (LMA). The LMA allowed Mr. Jones to borrow money from Merrill Lynch. The loan was secured by other assets owned by Mr. Jones under Merrill Lynch's management. Merrill Lynch charged Mr. Jones interest on the money advanced. Doc. No. 119, N.T. at 20. Mr. Jones then charged Fencl Enterprises interest based upon the average interest rate for each month multiplied by the daily loan balance. Doc. No. 119, N.T. at 34.

    The Debtor along with Mr. Fencl and Mr. Jones were present at the closing for 725 Morgan Avenue Doc. No. 119, Notes of Testimony (N.T.) at 19. 725 Morgan Avenue was purchased for $140,000.00. This purchase was funded by Mr. Jones via a transfer of $140,000.00 from his LMA on September 19, 2012. Doc. No. 119, N.T. at 19; Ex. P-2; Ex. P-3 at PLT000166.

    612 Lippincott Avenue was purchased on November 2, 2012, for $127,500.00. Mr. Jones advanced $128,574.32 from his LMA on November 1, 2012. Ex. P-2; Ex. P-3 at PLT169. Mr. Jones did not attend the closing on this house, but the Debtor and Mr. Fencl did attend. Doc. No. 119, N.T. at 22, 102.

    On January 22, 2013, Mr. Jones transferred $120,000.00 to the Debtor. Ex. P-3 at PLT 171. The purpose of the transfer was to purchase 401 Second Street. Doc. No. 119, N.T. at 24-25. The closing on 401 Second Street did not occur until March 8, 2013 because the property was removed from the market shortly before the scheduled closing, but was later relisted. 401 Second Street was purchased for $110,000.00. Ex. P-2. The Debtor attended the closing on this property. Doc. No. 119, N.T. at 30.

    On April 2, 2015, 633 Thomas Avenue was purchased for $105,000.00 and was deeded in the name of Fencl Enterprises because Mr. Jones wanted to flip the property as opposed to rehabbing and renting the property. Ex. P-2; Doc. No. 119, N.T. at 28-29. 633 Thomas Avenue was sold for $520,000.00 on December 3, 2021 and the proceeds are being held in an escrow account pending resolution of the Fencls' divorce proceedings. Doc. No. 119 at 30; Ex. P-2.

    On June 1, 2015, Mr. Jones transferred $175,000.00 to Fencl Enterprises to fund the purchase of 602 Cinnaminson Street. Doc. No. 119, N.T. at 27-28; Ex. D-3 at PLT 185. Doc. No. 119, N.T. at 30; Ex. P-2. Neither the Debtor nor Mr. Fencl provided any of the money used to buy any of the Properties. Doc. No. 119, N.T. at 103. Neither the Debtor nor Mr. Fencl provided any of the money to pay the contractors and tradesman who renovated the Properties. *Id.* at 105.

    Mr. Jones sent Fencl Enterprises a statement each month reflecting the credits, debts, loan balance, and interest charged. Doc. No. 119, N.T. at 32-33; Ex. P-5. For example, during the renovations of the 612 Lippincott Avenue, Mr. Jones' monthly statement detailed the interest rate for the period December 1, 2012 through December 31, 2012 at 1.9863% totaling $480.42 for the

4

month. The statement itemized the expenditures on drywall, painting, and electrical totaling $8,148.85. When the interest and expenditures were added to the opening balance of $279,524.11 the closing balance totaled $288,153.38. Ex. P-5 at PLT042. The transactions reflected in the Mr. Jones's LMA statement matched the expenditures on the monthly statement sent to Fencl Enterprises. Ex. P-5 at PLT170. On occasion, contractors would request payment in cash or that payment be made to their spouse. Doc. No. 119, N.T. 45-46. At times, Mr. Jones would write a check to Fencl Enterprises drawn from the LMA and Mr. Fencl would then pay the contractors. Doc. No. 119, N.T. at 51; Ex. P-3 at PLT196. When necessary, Mr. Jones also paid such items as real estate taxes, utilities, and lawn services and those expenses were also detailed on the monthly statements sent to Fencl Enterprises. Ex. P-5 at PLT164; Doc. No. 119, N.T. at 56-57; Ex. P-4 at PLT220. The statements were addressed to Fencl Enterprises and mailed to the Fencls' marital home. Mr. Jones also submitted into evidence a spreadsheet which identified the contractor/tradesman, the purpose/service provided, the property at which the service was provided, the payment date, and the amount of payment. Doc. No. 119, N.T. at 41-47; Ex. 11. The entries on the spreadsheet were consistent with the debits from the LMA account and the monthly statements sent to Fencl Enterprises.

In the Spring of 2018, the Fencls' marriage broke down. Mr. Fencl left the marital home and at some time thereafter abandoned his duties as the property manager. Mr. Fencl filed for divorce in 2019 and the Fencls have been engaged in acrimonious divorce proceedings since that time. The Debtor assumed control over the Properties, leasing the Properties, collecting the rent, and maintaining the Properties.

In the spring of 2020, Mr. Jones attempted to contact the Debtor via telephone regarding the properties. Ex. P-9 at PLT0007. After the Debtor did not respond to Mr. Jones' voicemails, Mr. Jones sent the Debtor a detailed email at the email address Michellebusza@hotmail.com regarding how much was owed by the Fencls on each property. Ex. D-9 at PLT007-010. On July 1, 2020, the Joneses' filed lis pendens on 612 Lippincott Avenue, 602 Cinnaminson Street, and 725 Morgan Avenue. Claims Register, POC No. 9. 633 Thomas Avenue was sold on December 3, 2021, for $520,000.00 and the proceeds are being held in an escrow account. The Debtor took up residence in 602 Cinnaminson Avenue after the Fencls' marital home was sold in December 2022. Tenants have occupied 612 Lipincott Avenue since January 2022 and tenants moved into 725 Morgan Avenue in February 2024. 401 Second Street is unoccupied since November 2023.

Mr. Jones paid the real estate taxes on 725 Morgan and 602 Cinnaminson on May 1, 2022, because the Debtor failed to do so. Doc. No. 119, N.T. at 56-57; Ex. P-4 at PLT220.  From December 2021 through June 2022, Mr. Jones paid the PSE&G bills for 725 Morgan Avenue and 602 Cinnaminson Street as the power bill was still in Keith Fencl's name. Ex. P-4 at PLT207 – PLT219. Mr. Jones paid for lawn service to be performed at 725 Morgan Avenue and 602 Cinnaminson Street during May 2022. Ex. P-4 at PLT222, Ex. P-5 at PLT166.  Mr. Jones testified that his claim included $375,907.10 in expenses, inclusive of interest, relating to 633 Thomas Avenue.  Doc. No. 119 at 93-94; Plaintiff's Ex. 5, Invoice dated 11/18/2022. Mr. Jones submitted

5

into evidence an invoice claiming $78,453.38 in administrative expenses and legal fees. Plaintiff's Ex. 5, Invoice date 11/18/2022.

Mr. Fencl testified regarding the establishment of the business relationship between Joneses and the Fencls. Mr. Fencl acknowledged that Mr. Jones provided the money to purchase and rehabilitate the Properties and Mr. Jones would provide money whenever the rent did not cover all of a property's expenses. Doc. No. 119, N.T. at 120-21. Mr. Fencl characterized Mr. Jones as a private bank. Doc. No. 119, N.T. at 123-24. Mr. Fencl testified he co-mingled rents, which were paid to Fencl Enterprises, from all five properties while he acted as property manager. Doc. No. 119, N.T. at 119.

The Debtor testified that since she took over management of the Properties, 612 Lippincott required a new water heater, refrigerator, washer and dryer, ceiling repair, garage door repair, plumbing repair, air conditioning repair, and painting. Doc. No. 119, N.T. at 147. The Debtor testified that she paid to change the locks, provide lawn care, and homeowner's insurance, the water bill, and the PSE&G bill. *Id*. at 147, 149. The Debtor winterized and installed a new sewer pipe at 725 Morgan. *Id.* at 149.

The Debtor testified that she received a loan from a Mr. John Latimer in the amount of $16,000 pre-petition, as well as an additional few thousand from her family to pay for the repairs. Doc. No. 119, N.T. at 162-163. The Debtor estimated that she spent $30,000.00, which was provided by her brother, to repair 401 Second Street, which required a clean out, stair repair, chimney repair, roof repair, window washing, prior to its sale. Doc. No. 119, N.T. at 171, 176. The Debtor is receiving $2,000 in rent per month from 725 Morgan Avenue and $1,250 in rent per month for 612 Lippincott. Doc. No. 119, N.T. at 165. She is currently unemployed, looking for full-time employment. The Debtor is not paying the property taxes on the Properties. Doc. No. 119, N.T. at 157, 161. The Debtor is residing in 602 Cinnaminson Street. Debtor acknowledges that neither she nor Mr. Fencl provided any of the money to purchase any of the Properties. Doc. No. 119, N.T. at 142.

## THE PARTIES' ARGUMENTS

The Joneses assert that they are entitled to recover under the theories of equitable lien and unjust enrichment. The Joneses argue that they submitted hundreds of pages of evidence including the LMA account statements, monthly account statements, copies of checks, and some paid invoices from the LMA account along with Mr. Jones' testimony tracing and connecting numerous transactions relating to the Properties to show that they provided the money to purchase and rehabilitate the Properties and that the Debtor was aware of this fact. The Joneses seek to recover equal to, or nearly equal to the amount they contributed to the purchase, rehabilitation, and other costs related to the Properties. Doc. No. 124 at 13.

The Joneses, relying upon *In re O'Brien*, 423 B.R. 477, 489 (Bankr. D.N.J. 2010), contend that when the intent of the parties was to effectuate a loan, an equitable lien may be found. Doc. No. 124 at 7. The Joneses argue that based on the evidence presented both they and the Fencls possessed a joint understanding and intent that the Joneses were going to provide the money for the Properties, Mr. Fencl would be the property manager, and the Debtor was going to be the title owner. The Joneses also rely upon *In re Fowler*, 425 B.R. 157, 205 (Bankr. E.D. Pa. 2010), which held that a party in possession who makes improvements to a property should under the principles of equity recover its costs to the extent the improvements enhanced the value of the property, to assert they are entitled to recover the costs of funding the improvements made to the Properties. Doc. No. 124 at 8. The Joneses assert they are seeking only to be made whole and that equitable liens exist "to prevent unjust enrichment, *i.e.,* where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another." Doc. No. 124 at 8 (citing *In re Sosnowski*, 314 B.R. 23, 27 (Bankr. D. Del. 2004) and *Branca v. Branca*, 443 A.2d 929, 931 (Del. Super. 1982)).

The Joneses argue that they are entitled to recover under the theory of unjust enrichment when "the opposing party received a benefit and [the] retention of that benefit without payment would be unjust." Doc. No. 124 at 9 (quoting *Wilmington Tr., Nat'l Ass'n v. Rivlin*, No. 24-5789 (MAS) (RLS), 2025 U.S. Dist. LEXIS 33890, at *12-13 (D.N.J. Feb. 25, 2025)) (other citations omitted). The Joneses maintain that to succeed on a claim for unjust enrichment a party must show "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its [implied] contractual rights." Doc. No. 124 at 9 (quoting *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288, 151 A.3d 545 (2016)). The Joneses contend that because the Debtor was not a signator to the Loan Agreement an implied contract existed among the parties. Doc. No. 124 at 10. The Joneses argue that the Debtor has benefitted by not being a signator to the Loan Agreement in that their claim has been classified as unsecured. The Joneses assert the Debtor would be unjustly enriched if she who has reaped the benefits of ownership such as collecting rent and living rent free in 602 Cinnaminson Street were to retain 100% of the equity in the Properties without repaying the Joneses for the costs including the interest costs. Doc. No. 124 at 10.

The Joneses concede that 633 Thomas Street was titled in the name of Fencl Enterprises, and it is not part of the analysis before the court. Mr. Jones testified that his cost basis for 633 Thomas Avenue was $375,907.10 and thus the amount of the Joneses' claim may be reduced by that amount. Doc. No. 124 at 11-12.

The Joneses argue that pursuant to Section 502(b), 11 U.S.C. § 502(b), they are entitled to pre-petition interest at the contract rate. Doc. No. 124 at 12 (citing *In re Nat'l Reality Inv. Advisors. LLC*, Nos. 22-14539, 23-01169, 2024 Bankr. LEXIS 34, at *18-19 (Bankr. D.N.J. Jan. 5, 2024)) (other citations omitted). The Joneses assert the Debtor should be charged the interest that they were paying on the amount of money borrowed from Merrill Lynch through the LMA Account. The Joneses note Debtor conceded that neither she nor her husband provided the money to purchase and rehabilitate the Properties, she knew the Properties were titled in her name, and that

7

she could collect rent from the Properties. The Joneses argue the Debtor knew or reasonably should have known that the money for the Properties was borrowed from the Joneses and although there is no dispute the Debtor did not sign the Loan Agreement, the Joneses were clearly supporting the Properties and they were being charged interest on their own borrowing, making it logical that the interest expense would be passed to the borrower. Doc. No. 124 at 13.

The Debtor argues that the Joneses have failed to carry their burden under *In re Allegheny lnt'I, Inc.*, 954 F.2d 167, 173-174 (3d. Cir. 1992). Doc. No. 123 at 1. The Debtor notes she did not sign the Loan Agreement, Keith Fencl and Fencl Enterprises was the property manager, Keith Fencl never discussed properties with her, Mr. Jones never communicated with the Debtor regarding the Properties, and she was never the owner of 633 Thomas Street. The Debtor claims that Mr. Jones and Mr. Fencl were collecting rent from properties she owned and using her money to maintain non-debtor property, 633 Thomas Street. Doc. No. 123 at 6. The Debtor argues that it is improper for the Joneses to charge her for any costs related to 633 Thomas Street. Doc. No. 123 at 7. The Debtor claims that the Joneses have failed to provided evidence supporting any claims to legal and administrative expenses. *Id*. The Debtor argues that Mr. Jones testified that $60,158.71 was spent on 633 Thomas Street and such charges should not be allocated to her. Doc. No. 123 at 7-8 (citing Doc. No. 119 at 125-26).

The Debtor denies that she owes the Joneses any interest. The Debtor argues the interest was guaranteed by the Loan Agreement she did not sign, she did not agree to pay interest, was not told she had to pay interest, did not have any control over the rental or management of the properties, and did not have any control over how much money was invested in the Properties. Finally, Debtor argues the Joneses cannot recover interest on the funds expended on 633 Thomas Street.

**THE LAW**

Courts use a burden shifting paradigm for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a). *Allegheny Int'l, Inc.*, 954 F.2d at 173. The initial burden is on the claimant to allege facts sufficient to support the claim. *Id.* If the claimant meets this burden, the claimant has established that the claim is "*prima facie*" valid. *Id.* (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991))). The burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *Id.* "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* at 174 (citing *In re WHET, Inc.*, 33 Bankr. 424, 437 (Bankr. D. Mass. 1983)). "The burden of persuasion is always on the claimant." *Id*. (other citations omitted).

New Jersey courts have long recognized the doctrine of equitable liens. As noted in *In re O'Brien*, 423 B.R. 477, 489 (Bankr. D.N.J. 2010):

8

> The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt, is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made. This wholesome equitable principle is one of wide, if not universal, recognition and application.
>
> The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge, or pledge property, real or personal, as security for an obligation, appears, and the property or thing intended to be given, charged, or pledged is sufficiently described or identified, then the equitable lien or mortgage will follow as of course.

*See also In re Foster*, AP No. 08-2206, 2012 Bankr. LEXIS 963, at *28-29 (Bankr. D.N.J. Mar. 7, 2012) (citing *Rutherford Nat. Bank v. H.R. Bogle & Co.*, 114 N.J. Eq. 571, 169 A. 180, 182 (N.J. Ch. 1933)).

Additionally, under New Jersey law in order to prove a claim of unjust enrichment, "the plaintiff must establish that the defendant received a benefit, that the defendant was aware of the benefit, and that the benefit was accepted by the defendant under circumstances that would make the acceptance inequitable without payment for its value." *In re NJ Affordable Homes Corps.*, No. 05-60442 (DHS), 2013 Bankr. LEXIS 4798 at *87; 2013 WL 6048836 (Bankr. D.N.J. Nov. 8, 2013) (citing *In re OODC, LLC,* 321 B.R. 128, 145 (Bankr. D. Del. 2005)).

While section 502(b), 11 U.S.C. § 502(b), disallows the recovery of post-petition interest by an unsecured creditor, section 502(b) does not prohibit the recovery of pre-petition interest by an unsecured creditor. *In re Nat'l Reality Inv. Advisors, LLC*, No. 22-14539, 2024 WL 74428, at *6 (Bankr. D.N.J. Jan. 5, 2024) and 2024 Bankr. LEXIS 34, at *18  (citing *In re Energy Future Holdings Corp.*, 540 B.R. 109, 113 (Bankr. D. Del. 2015) and *United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372-73, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)).

In New Jersey, the "polestar of [contract] construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety[.]" *Conway v. 287 Corp. Ctr. Associates,* 187 N.J. 259, 269, 901 A.2d 341, 347 (2006). In *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015), the Supreme Court noted that "[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." The American Rule applies to fee-shifting in federal courts. *Choi v. ABF Freight Sys., Inc.*, 14-7458, 2015 U.S. Dist. LEXIS 166942, 2015 WL 8758846, at *2 (D.N.J. Dec. 14, 2015) ("Our legal system generally adheres to the 'American Rule,' under which each party bears its own litigation expenses, including attorneys' fees, regardless of whether it wins or loses.

9

*See Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011). Departure from the 'American Rule' is only appropriate when there is express authorization in a statute, court rule, or contract. *Fin. Cas. & Sur., Inc. v. Bonino*, No. 11-4316, 2015 U.S. Dist. LEXIS 77576, 2015 WL 3754549, at *2 (D.N.J. June 16, 2015).

## DISCUSSION

The matter currently before the court is the amount of the Joneses unsecured claim. The parties previously agreed that because the Debtor was not a signator to the Loan Agreement between the Joneses and Fencl Enterprises the Joneses' claim was unsecured.

The court heard testimony from Mr. Jones, Mr. Fencl, and the Debtor. The court finds the testimony of Mr. Jones to be entirely credible. Mr. Jones' testimony succinctly and directly demonstrated to the court the source of the funds to purchase the Properties, the funds used to rehabilitate the Properties, and in later years to pay such expenses as property taxes, lawn care, and gas and sewer bills. The court is more than satisfied that Joneses were source of this money. The court also credits Mr. Jones' testimony regarding accrual of interest and the intent to recoup his total investment through the eventual sale of the Properties. Mr. Fencl's testimony, while at times self-serving, was consistent with Mr. Jones' testimony particularly relating to the financial arrangements underpinning the Properties. The court credits Mr. Fencl's testimony that both he and the Debtor knew that the Joneses supplied the money. The Debtor reluctantly admitted that the Joneses must have been the source of the money to purchase the properties only after acknowledging that the money was not supplied from her joint bank account with Mr. Fencl. While the Debtor testified that she performed maintenance and repairs on the property she did not provide any supporting documentary evidence. The Court notes that upon cross-examination of Mr. Jones and Mr. Fencl, the Debtor did not attack any costs claimed by Mr. Jones with exception of those related to 633 Thomas Avenue. Mr. Jones' testimony has not been assailed. The Joneses have proven the validity of the claim by a preponderance of the evidence. *Allegheny Int'l, Inc.*, 954 F.2d at 174.

The Joneses have asserted a right to recover under the theories of equitable lien and unjust enrichment because the Debtor was not a signator to the Loan Agreement. The parameters of the intended real estate venture were clear. The Debtor has benefitted from the Loan Agreement by acquiring title to four properties without providing any of the funds to purchase or rehabilitate the Properties. Despite the Debtor denying any knowledge of the contents of the Loan Agreement, she repeatedly participated in the purchase of the Properties by attending the closings and allowed the Properties to be titled in her name. By allowing this to occur, the Debtor was a voluntary participant in this real estate venture, who chose not to inform herself of the details of the transactions. "[E]quity looks at the final intent and purpose rather than at the form." *O'Brien*, 423 B.R. at 489. The Joneses have demonstrated to this court by a preponderance of the evidence that their money was dedicated to this real estate venture with the expectation that they would recoup on a monthly basis the interest charged by Merrill Lynch and the purchase and rehabilitation costs plus 50% any

10

equity upon the sale of the Properties. Consequently, grounds exist to impose an equitable lien upon the four properties.

In addition, while the Debtor did not sign the Loan Agreement between the Joneses and Fencl Enterprises, she has reaped the benefits of that agreement by acquiring title to four properties for which she did not provide any financial contribution. The Debtor is currently residing in one property and collecting rent on two other properties. The Debtor cannot have the benefits of the Loan Agreement and ignore its burdens. The Debtor received a direct benefit through the Properties being placed in her name in the real estate venture; the Debtor had to be aware of that benefit through her participation in the process — and the court does not find the Debtor credible to suggest otherwise; the Debtor accepted the benefit of the real estate venture and it would be wholly inequitable to allow the Debtor account for the value of the benefit. *NJ Affordable Homes Corps*., 2013 Bankr. LEXIS 4798 at *87. The Debtor has been or will be unjustly enriched.

The equitable resolution of this dispute requires that parties adhere to the terms of the Loan Agreement as closely as possible. Nevertheless, the Joneses, as unsecured creditors, will not be made whole as they will not be able to recover the post-petition interest that has accrued on the LMA. *Nat'l Reality Inv. Advisors, LLC*, 2024 WL 74428, at *6 and 2024 Bankr. LEXIS 34, at *18. The Joneses have also conceded that they cannot recover from the Debtor any costs related to the purchase, rehabilitation, and maintenance of 633 Thomas Avenue as that property never belonged to the Debtor.[2] Accordingly, the Joneses proof of claim in the amount of $1,422,602.98 will be reduced by $375,907.10.

The Joneses are also unable to recover the claimed administration costs and attorneys' fees. While the Loan Agreement provides: "In the event of a breech (sic) or default by either party, the party at fault agrees that all costs incurred by the other part will [be] repaid from the final proceeds." The Debtor is not a party to the Loan Agreement. The Loan Agreement does not specifically provide for the payment of costs and attorneys' fees where allegations of breach or default are not present as is the case here. The Joneses have not persuaded the court that the Debtor should be liable for the attorneys fees and costs.[3] Thus, under the American Rule each party must bear its own costs and the Joneses claim will reduce by another $78,453.38.

---

[2] To the extent that the Debtor argued that rental receipts from the four properties titled in her name, were misappropriated by Mr. Fencl and Mr. Jones to rehabilitate 633 Thomas Avenue that is an issue to be resolved by the state court matrimonial proceedings as it appears that Mr. Fencl was managing all five of the properties as a single enterprise under the Fencl Enterprises umbrella.

[3] The court will not speculate or opine on whether the Joneses could be able to recover their costs and attorneys' fees from Mr. Fencl, who seemingly abandoned and defaulted upon his duties under the Loan Agreement.

11

## CONCLUSION

The Joneses have established by a preponderance of the evidence that they have an unsecured claim and are entitled to recover some of their investment in this real estate venture under the theories of equitable lien and unjust enrichment. This claim includes the costs to purchase, rehabilitate, and maintain the four properties and the pre-petition interest charged on the LMA. The Joneses are not entitled to recover administrative and legal costs under the American Rule. The Joneses' claim shall be set down in the amount of $968,242.50. Looking at the final intent and purpose of the real estate venture rather than the form of the Loan Agreement, the Debtor has reaped the benefit of acquiring four properties, but she cannot be unjustly enriched in derogation of the Joneses intent and contributions.

/s/ Andrew B. Altenburg, Jr,<br>United States Bankruptcy Judge

January 12, 2026